Gary A. Dordick, Esq. (SBN #128008)
GARY A. DORDICK, A LAW CORPORATION
509 South Beverly Drive
Beverly Hills, CA 90212
Tel: (310) 551-0949 | Fax: (855) 299-4444
dordicklaw@aol.com

Cara L. Eisenberg, Esq. (SBN #128208)
The EISENBERG LAW Firm
509 South Beverly Drive
Beverly Hills, CA 90212
Tel: (310) 201-0211 | Fax: (310) 551-1644
cle@eisenberglawfirm.com

Attorneys in association for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PORFIRIO SANTOS-LOPEZ, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LONG BEACH; OFFICER DOES 1-50; and DOES 51-100, inclusive,<br><br>Defendants. | Case No.: CV14-05781-FMO-AS<br>Assigned to Hon. Fernando H. Olguin<br><br>**PLAINTIFF'S AMENDED MEMORANDUM OF CONTENTIONS OF LAW AND FACTS**<br><br>Trial: NOVEMBER 1, 2016<br>Pretrial Conference: 10/21/16 |

**PLEASE TAKE NOTICE** that Plaintiff PORFIRIO SANTOS-LOPEZ, hereby submits his amended Memorandum of Contentions of Fact and Law in relation to the Pre-Trial Conference to be held on October 21, 2016.

/ / /

-1-

**PLAINTIFF'S AMENDED MCLF**

# I. INTRODUCTION

In this civil rights action, Plaintiff seeks redress for the excessive beating he suffered when several defendant police officers of the City of Long Beach Police Department sought to effect his arrest. As a result, Plaintiff suffered debilitating injuries, which left him with a lifetime of pain and disfigurement. The force used to arrest plaintiff was unconstitutionally excessive and unreasonable and violated federal and state law.

# II. PLAINTIFF'S CONTENTIONS OF FACT

On September 2, 2013, at about 6:00 pm, several Long Beach Police Department officers savagely beat the 46 year-old Plaintiff, Porforio Santos-Lopez, while he lay on his shirtless back in the street. It is undisputed that he was unarmed and that the officers knew he was intoxicated and incoherent. As is detailed below, this attack left Mr. Santos-Lopez bloodied with a broken, deformed right arm and elbow, broken and deformed right lower leg, multiple lacerations on his head, legs, arms (with visible scars), and debilitating pain from an injured back and neck.

Earlier on September 2, 2013 before the police beating, Mr. Santos-Lopez had been visiting customers of his Landscaping business to collect payment for monthly services. He stopped by the P & B Liquor store along his route to pick up a beer, when he ran into one of his clients, the Manager of a nearby apartment complex. Plaintiff collected payment from the Manager and then, while hanging out near his truck in front of the store, an acquaintance (Murietta) walked up to Plaintiff and greeted him. They hung out, drank beer, and were joined by another man (Cortez). These events were caught on the store's video camera and the three men amiably talked out front, near Plaintiff's car for over 20 minutes. They also went into the store to buy some more beer, which they consumed near Plaintiff's truck. The interactions appear friendly on camera, but Plaintiff eventually slapped or tried to slap one of the men (Cortez – who appears to block the slap) and throws a can of beer in the direction of one of the men that misses him.

    Plaintiff and Murietta start to scuffle in the street and move off-camera. Murietta was wearing flip flops at the time. The street fight was purely voluntary. On video, Murietta loses his flip flops, walks onto the sidewalk barefoot, and motions to Cortez to give up his sneakers, which he does. After Murietta puts on the sneakers, he returns into the street to continue fighting with the plaintiff.

    The owner of the liquor store called 911. He reported that two (2) unarmed, intoxicated men were arguing outside of a liquor store at the intersection of South and Locust streets. He reported that he called, because he was fearful that the fight would escalate and that his store window would get broken. At or about the same time, another man called 911 and reported that someone wanted to fight him. The call was disconnected before it was complete.

    Officer Sanchez responded and was the first officer to arrive at the scene. As he approached, he reported to dispatch that there were two men in the street, but he could not determine if they were "playing or fighting". One of the men (known now as Murietta) sprinted away from the scene. Officer Sanchez testified at his deposition that he was not concerned that this unknown man, who was reported to be intoxicated and was seen fighting or playing in the street, ran away from the scene as the officer approached. He didn't notify anybody and didn't search for the other participant. After Officer Sanchez approached Mr. Santos-Lopez in the street, a Liquor Store video shows him calmly walking onto the sidewalk and mulling about until he is joined by Officer Zatarain on the sidewalk. Both officers seem unconcerned with Mr. Santos-Lopez.

    Officers Martinez and Stolarski then arrived nearly simultaneously and parked closer to the intersection, with their squad cars parallel, leaving a pathway of a few feet between them.

    According to the police reports, Officers asked Mr. Santos Lopez to go over to a patrol vehicle and put his hands on the hood. He started to go over to the vehicle, but

**PLAINTIFF'S AMENDED MCLF**

allegedly stopped, squatted, pounded his fists on the ground, and said "Kill me" or words to that effect.

At deposition, Officer Zatarain testified that he tased Mr. Santos-Lopez while he was in that squatted position, but it had no effect. Mr. Santos-Lopez then rose and started to "walk" in westerly direction toward the pathway between the two patrol vehicles. In the video, Officers Martinez and Stolarski are next seen striking Mr. Santos-Lopez with their batons as he walks backward through the pathway between Offr. Martinez's and Offr. Stolarski's vehicles, while fending off their batons with his arms. When Mr. Santos-Lopez was almost through that pathway, Officer Zatarain again discharged his Taser and Plaintiff dropped like a board falling backward onto the asphalt.

Once Mr. Santos-Lopez was prone on the ground on his back incapacitated from the TASER, the other officers immediately started beating him with their batons as can be seen in the video. There were no attempts to handcuff or take him into custody.

Other videos of the scene, taken by bystanders, show that at no time did Santos-Lopez attempt to get up or to run away. He did not strike the officers, but instead defended against their excessive force. He was surrounded at all times by no less than 4 police officers who continued to taze him and beat him with batons.

Sergeant Fernandez was the first field supervisor on site. He admittedly stood around for a few minutes before taking charge and devising a strategy. During that time, Officer Stolarski continued to beat Mr. Santos Lopez with his baton and Officer Zatarain continued to taze Plaintiff. Another officer, Christopher Martinez, also intentionally kicked Mr. Santos-Lopez in the head and shoulder. Officer Eddie Sanchez witnessed all the unreasonable and excessive force, but took no action to intervene and to stop the excessive force by the other officers.

///

1. Although he doesn't remember much about the incident, Mr. Lopez remembers that he was fearful that the police were going to kill him and that he was afraid that he going to die in the street. After the police handcuffed him, and hobbled his legs, they removed him from the scene via ambulance and he was taken to the hospital. He remained in the hospital for nearly a week and still has continues to this day to suffer from permanent disabling injuries.

After they arrested Mr. Santos-Lopez, the police sought out Cortez and requested that he sign a private person's arrest (aka a citizen's arrest), which he did. Although criminal charges were brought against Plaintiff later, they were all dismissed except Plaintiff agreed to plead to a misdemeanor battery against Murietta for slapping him.

The defendants have admitted that Officer Martinez kicked Plaintiff in his head or shoulder area and disciplined him for violating LBPD practice and policy and this, at a minimum, was a battery upon Plaintiff's person. Defendant City has also admitted that Sgt. Americo Fernandez did not take control of the scene once he arrived in the field, a further violation of the City's practice and policy for which the City disciplined that Sergeant.

All officers (including Sgt. Fernandez) also were retrained.

In total, 10 TASER discharges at the Plaintiff were logged and dozens of baton strikes caught on video.

Defendant Officer Zatarain decided *on his own* to arrest Plaintiff before firing the Taser at him on the first occasion. Yet admittedly, that Officer didn't communicate this to any other defendant officer present and claims that he decided to arrest Plaintiff for being drunk in public and committing a misdemeanor battery (slap) outside the presence of a police officer. Contradicting this testimony is the fact that **after** Mr. Santos-Lopez was removed bloodied and injured from the scene and taken by ambulance to the hospital, officers sought out the two men who scuffled with Plaintiff. Murietta (the fellow engaged in the street fight with Plaintiff) declined to press charges

**PLAINTIFF'S AMENDED MCLF**

and to make a citizen's arrest despite the police request. Luis Cortez, the man that Plaintiff had "slapped", acceded to the police request that he file a Citizen's arrest for battery (a slap). This is the only "crime" that Plaintiff was convicted of at subsequent criminal proceedings. Charges for resisting arrest, drunk in public, and battery against a police officer were dismissed.

Further, none of the officers were trained in how to detain or arrest a subject positioned as a "turtle on its back" or to control a field detention and/or arrest with multiple officers and no field supervisor. This lack of training (custom and practice) led directly to the injuries suffered by Plaintiff at the hands of the officers.

While defending his actions in his Skelly hearing for kicking Plaintiff in the head, Officer Martinez argued that he had not received training on how to arrest a person, who was in the position of Mr. Santos-Lopez – on his back with his legs and arms in front (e.g., referred to as a "turtle on its back") before the incident. The LBPD subsequently provided extensive re-training in this area to Offr. Martinez and all other officers.

Plaintiff's Complaint prays for economic and non-economic damages. The economic damages claimed are for past medical expenses and for future medical expenses. The damages claimed by Plaintiff for non-economic damages include pain, suffering, disfigurement and emotional distress. Additionally, Plaintiff's Complaint prays for attorneys' fees and costs as allowed under 42 U.S.C. §1988 and for punitive damages against the individual Defendant officers.

As a result of the beating, Ms. Santos-Lopez was taken by ambulance to Long Beach Memorial Hospital where he remained for several days. He was given morphine for the pain and diagnosed with the following injuries among others:

1. Non-displaced proximal right tibia fracture and a remote right distal tibular fracture;

2. Blunt head trauma, 5 cm laceration to scalp

3. Multiple lacerations to arms and legs (about 4 cm each)

    4. Right arm fracture involving a radial capitellar dislocation, a comminuted distracted intrarticular right proximal ulnar fracture involving the olecranon and coranoid processes and a nondisplaced proximal fright ulnar shaft fracture.

    5. Partially collapsed lung (left apical pneumothoraces)

    6. Multiple wounds, cuts, and contusions all over his body

    7. Blunt chest, abdominal trauma

Hospital Doctors performed surgery on Plaintiff's right arm/elbow, requiring open reduction and internal fixation of the left elbow with fixed hardware and his lacerations were stitched.

Since his stay in the hospital, Mr. Santos-Lopez has undergone extensive physical therapy and an additional surgery to remove the hardware in his right arm/elbow. He still experiences pain and discomfort in that arm which is noticeably crippled. He no longer has full use or range of motion of his right arm.

To date, Mr. Santos-Lopez has incurred extensive medical bills, and the parties have stipulated to the amount thereof.

The Plaintiff has complained about neck and back pain, radiating down his legs, as well as numbness. Recent MRI results show multiple disk herniation. Plaintiff lives with debilitating back pain as a result of injuries sustained in the incident.

In addition to his injuries and special damages, Mr. Santos-Lopez reports that, as a result of the police beating, he is fearful of the police, has nightmares, and trouble sleeping. Among other things, he is in constant pain in his right arm that was left crippled by the beating. He is right hand dominant, so he now only has limited use of his right arm. Plaintiff also regularly feels numbness and tingling in his upper left leg, consistent pain at his left knee, intermittent pain in his back and neck, difficulty walking long distances or standing for long periods of time, and suffers from headaches.

Mr. Santos-Lopez was 46 years old at the time of the police beating. His life expectancy from that date is 31.7 years. He is entitled to compensation for his physical

**PLAINTIFF'S AMENDED MCLF**

and mental pain and suffering and emotional distress during the incident and throughout his lifetime.

## III. CONTENTIONS OF LAW

Plaintiff initially asserted 8 causes of action against the defendant City of Long Beach and its officers. Plaintiff intends to go to trial on three (3) claims only, as itemized below.

**LR 16-4.1 Claims and Defenses**

**a) <u>Summary of Plaintiffs' Remaining Claims</u>**

**Claim 1:** Under color of law, Defendant officers, and each of them, violated Plaintiffs' constitutional rights to be free from unreasonable Search And Seizure Unreasonable Search And Seizure And Due Process – Excessive Force. 42 USC §1983.

**Claim 2:** The Defendant City deprived Plaintiff of his constitutional rights by knowingly maintaining or implementing an Unconstitutional Municipal Custom, Practice Or Policy (inadequate training and supervision)

**Claim 3:** The Defendant officers, while working as police officers in the line of duty, committed a battery upon the Plaintiff.

**b) <u>Elements Required to Establish Each Claim.</u>**

**Claim 1: Fourth Amendment Violation—Excessive Force**. Defendant Officers each used excessive force, or failed to prevent the use of excessive force, against Plaintiff in violation of his Fourth Amendment rights.

Elements:

(i) Defendant Officers each acted under color of law;

(ii) Defendant Officers each used excessive force, or failed to prevent the use of excessive force, against Plaintiff thereby depriving Plaintiff of his constitutional right not to be subjected to use of excessive force;

(iii) The excessive force caused Plaintiff to suffer injury.

*See* Ninth Circuit Manual of Model Jury Instructions, No. 9.22; *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Robins v. Meecham*, 60 F.3d 1436 (9th Cir. 1995).

**Claim 2: 42 USC §1983 Municipal Liability For Unconstitutional Custom, Practice Or Policy**

Elements:

1. The acts of the Defendant Officers deprived the Plaintiff of his constitutional rights;

2. The defendant Officers acted under color of law;

3. The violation was caused by, or committed pursuant to, a policy or custom of the City of Long Beach ( e.g., the training policies of the defendant were not adequate to train its police officers to handle the usual and recurring situations with which they must deal and supervision was inadequate), and

4. The City demonstrated deliberate indifference to obvious consequences of its failure to train and supervise its police officers adequately; and

5. The City's failure to provide adequate training and supervise caused the deprivation of the plaintiff's rights by the defendant officers.

*Monell v. Department of Social Services of City of New York*, 436 US 658 1978)

**Claim 3: Battery**

The elements plaintiff must prove to establish his battery claim are as follows:

1. That each defendant officer caused Plaintiff "to be touched with the intent to harm him,"

2. That Plaintiff "did not consent to the touching," and

3. That Plaintiff "was harmed" by each defendant Officer's conduct.

4. That each Defendant Officer "used unreasonable force."

See CACI Instructions No. 1300, 1305.

**PLAINTIFF'S AMENDED MCLF**

Under *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012), plaintiffs have the burden of proof to show that the Officers' battery of Plaintiff violated the Fourth Amendment's prohibition of excessive force.

## IV. KEY EVIDENCE RELIED ON IN SUPPORT OF PLAINTIFF'S CLAIMS

In brief, Plaintiff relies on the following key evidence in support of each of his claims: (1) the testimony of percipient witnesses to the detention, arrest, and beating (use of force); (2) the testimony of Defendant Officers; (3) the testimony of Plaintiff; (4) the testimony of Plaintiff's police practices expert; (5) the videotapes of the events; (6) photographs of the scene; (7) the dispatch tape; (8) standard law enforcement training materials; (9) the investigation and findings of the Use of Force; (10) the testimony of Plaintiff's medical and treating doctors; (11) the testimony of Plaintiff's relatives and girlfriend concerning his non-economic damages; (12) the testing of the TASER discharges; and (13) testimony of other City employees (PMKs and investigating officers). Plaintiff contends that this evidence will satisfy the burden of proof to support his factual assertions as set forth above.

## V. ATTORNEYS' FEES

Plaintiff is entitled to Attorneys' Fees and Costs in this Civil Rights Case (42 U.S.C. Section 1988). Plaintiff's counsel has performed a great deal of work to date in this case, including extensive discovery, investigation, and taking multiple depositions including extensive trial work. Thus, with the work required to complete the upcoming expert discovery, trial preparation, and Trial, Plaintiff's counsel expects that the attorneys' fees will be substantial.

## VI. EVIDENTIARY ISSUES

The parties have entered into a Stipulation to preclude mention, admission, testimony or argument about: (1) Past or present use of illegal drugs; (2) Criminal history and/or prior bad acts, (3) Plaintiff's citizenship or immigration, and

(4) Reduction of the reasonable value of the medical bills incurred by the uninsured Plaintiff.

Defendants' Motion in *Limine* to limit introduction of the spectator cell phone video no. 1 is pending.

## VII. ABANDONMENT OF ISSUES

As is detailed above, Plaintiff is no longer proceeding on his Section 1983 violations based on ratification and denial of medical treatment, false arrest, negligence, and the BANE Act.

## IX. THE TRIAL IS BY JURY

The issues herein are triable to a jury as a matter of right. The parties made a timely demand for trial by jury.

Dated: October 19, 2016        LAW OFFICES OF GARY A. DORDICK
                               THE EISENBERG LAW FIRM


                               By:   /s/Cara Eisenberg_____
                                     Cara L. Eisenberg, Esq.
                                     Attorneys for Porfirio Santos-Lopez

-11-

**PLAINTIFF'S AMENDED MCLF**

12

**PLAINTIFF'S TRIAL WITNESS LIST**